1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRANK BACA,

        Plaintiff,

    v.

MARTIN BITER, et al.,

        Defendants.

**CASE NO. 1:15-cv-01916-MJS (PC)**

**ORDER FINDING COGNIZABLE CLAIMS AGAINST DEFENDANT DOES 1-3 IN THEIR PERSONAL CAPACITIES AND 4-18 IN THEIR OFFICIAL CAPACITIES**

**ORDER DISMISSING, WITH PREJUDICE, CLAIMS AGAINST DEFENDANT DOES 1-3 IN THEIR OFFICIAL CAPACITIES**

**ORDER OPENING DISCOVERY FOR THE LIMITED PURPOSE OF IDENTIFYING DOES 1-18**

**(ECF No. 8)**

**THIRTY-DAY DEADLINE**

    Plaintiff Frank Baca, a prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 28, 2015. Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 5.) No other parties have appeared in the action.

    On June 2, 2016, the Court screened Plaintiff's first civil rights complaint and found it stated cognizable claims against Does 6-20 in their official capacities for instituting a

policy preventing Plaintiff from receiving treatment for Hepatitis C. (ECF No. 6.) Plaintiff's remaining claims were not cognizable, and Plaintiff was directed to file either a notice of willingness to proceed on his cognizable claims or an amended complaint. Id. Plaintiff chose the latter option, and his August 4, 2016 first amended complaint is before the Court for screening. (ECF No. 8.)

## I.    Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

## II.   Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962,

969 (9th Cir. 2009).  Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.    Plaintiff's Allegations

Plaintiff is currently incarcerated at Kern Valley State Prison ("KVSP") in Delano, California.  He brings this action against Does 1 through 3, physicians and primary care providers ("medical staff") employed by the California Department of Corrections and Rehabilitation ("CDCR") at KVSP, and Does 4 through 18, members of the Headquarters Utilization Management ("HUM") Committee employed by CDCR (collectively, "Defendants").[1]  Does 1 through 3 each, at some point, were responsible for Plaintiff's medical care and are sued in their individual and official capacities.  Does 4 through 18 were responsible for the implementation of CDCR policies regarding inmate medical care, and are sued in their official capacities.  Plaintiff alleges that Defendants violated his right to be free from inhumane conditions of confinement under the Eighth Amendment by denying him adequate medical care to treat his Hepatitis C virus ("HCV").

Plaintiff's allegations may be summarized as follows:

In 2007, Plaintiff was diagnosed with genotype 1 HCV.  HCV is a viral infection that attacks the liver.[2]  In some cases it may cause cirrhosis of the liver, which can lead to permanent liver damage and death.  It can take years for an infected person to begin to feel sick, although certain symptoms may appear within two weeks to six months of infection.  It is recommended that anyone who has been diagnosed with HCV seek the advice of a medical professional, even if they do not yet have symptoms.  Treatment with

---

[1] The Doe Defendants are not numbered as they were in Plaintiff's original complaint. In the original complaint, Plaintiff named Does1-5 as doctors and medical staff responsible for his treatment, and Does 6-20 as HUM Committee members responsible for implementing an unconstitutional policy. The Court will adhere to the numbering inPlaintiff's first amended complaint.

[2] Plaintiff cites to the New York City Department of Health's website as his source of information for facts pertaining to the disease. http://www1.nyc.gov/site/doh/health/health-topics/hepatitis-c.page (last visited November 9, 2016).

1   a combination of two drugs, ribavirin and interferon, may help patients with HCV with

2   active inflammation of the liver.

3   Recent studies have shown that the sooner an infected person is treated, the

4   better his or her prognosis, and in some cases the patient may even be cured.  For

5   example, according to studies published on its website, the drug Harvoni has been

6   proven to cure 99% of patients with genotype 1 HCV who have had no prior HCV

7   treatment.[3]

8   Within the last year, Plaintiff began to experience symptoms from the disease,

9   including short-term memory problems, nosebleeds, severe itching and swelling, joint

10  pain, and headaches.  Plaintiff also underwent a liver biopsy which showed liver scarring

11  known as fibrosis, a precursor to cirrhosis. Because Plaintiff's symptoms grew

12  increasingly worse, he sought medical treatment from KVSP's medical department.

13  On January 7, 2015, Plaintiff underwent an in-depth medical assessment in which

14  his medical history, tests, and symptoms were discussed and laboratory tests were

15  ordered. It was determined that Plaintiff had a fibrosis score of 1.45. On February 25,

16  2015, Doe 1 informed Plaintiff that under the California Correctional Healthcare Services

17  guidelines, Plaintiff was ineligible to receive treatment for HCV.  On March 8, 2015, Doe 2

18  saw Plaintiff regarding an appeal Plaintiff filed complaining about his lack of HCV

19  treatments; Doe 2 also denied Plaintiff treatment.  On May 28, 2015, Plaintiff had a

20  wellness visit with Doe 3, during which lab tests were ordered.  During that visit, Plaintiff

21  discussed his HCV symptoms with Doe 3.  However, he was again denied treatment.

22  Plaintiff states he has received no treatment for the symptoms he continues to

23  experience.

24  Does 4 through 18 are all members of the HUM committee and are responsible for

25  developing the California Correctional Health Care Services policy.   These Defendants,

26  therefore, promulgated the guidelines that have precluded Plaintiff from receiving

27  treatment for his HCV.  Under their policy, an inmate may only receive treatment for his

28

---

[3] www.harvoni.com, submitted March 2015.

4

HCV if his disease has advanced to a minimum of stage 3.  Because of the policy, Plaintiff has been denied treatment for his HCV, treatment which could relieve his current symptoms, prevent the disease from advancing further, and ultimately save his life.

Plaintiff states that since the California Correctional Health Care Services policy is an "underground" policy not contained in the California Code of Regulations, it is an illegal policy.

Plaintiff seeks an injunction requiring: (1) Does 1 through 3 to administer treatment for Plaintiff's HCV; (2) Does 4 through 18 to develop a policy allowing Plaintiff to receive treatment; and (3) Does 4 through 18 to develop a policy which takes into account new advancements for the treatment of HCV.  Plaintiff also seeks monetary relief from Does 1 through 3 in the form of compensatory and punitive damages.

**IV.     Discussion**

**A.     Official Capacity Claims**

Plaintiff sues all Defendants in their official capacities. He was previously advised that he may not seek monetary damages against state officials acting in their official capacities. Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). To the extent he proceeds against Defendants in their official capacities, therefore, Plaintiff may only seek prospective relief against them. See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010).

In addition to being limited to prospective relief, a plaintiff pursuing defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992). Furthermore, although Plaintiff is permitted to pursue claims for injunctive relief against state actors in their official

1    capacities, "[a] plaintiff seeking injunctive relief against the State is not required to allege

2    a named official's personal involvement in the acts or omissions constituting the alleged

3    constitutional violation."  Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114,

4    1127 (9th Cir. 2013) (citing Hafer, 502 U.S. at 25.)  "Rather, a plaintiff need only identify

5    the law or policy challenged as a constitutional violation and name the official within the

6    entity who can appropriately respond to injunctive relief."  Hartmann, 707 F.3d at 1127

7    (citing Los Angeles County v. Humphries, 562 U.S. 29, 35-36 (2010)).

8         Plaintiff alleges that Does 4 through 18 implemented and executed a policy that

9    denied medical treatment to inmates afflicted with HCV genotype 1. He seeks to have the

10   policy modified so that he and other inmates infected with genotype 1 may receive

11   treatment. Plaintiff has sufficiently identified the policy he wishes to challenge as a

12   constitutional violation for the purposes of an official capacity suit. Furthermore, Plaintiff

13   has alleged that an official or officials within the policymaking entity (the HUM Committee)

14   may appropriately respond to the injunctive relief, i.e., by changing the policy.  Therefore,

15   Plaintiff has alleged a cognizable claim against committee member Does 4 through 18 in

16   their official capacities.

17        However, Plaintiff has not shown how Does 1 through 3, members of the medical

18   staff of KVSP, are agents of the HUM committee and thus responsible for the policy at

19   issue.  He has not shown that the medical staff established, implemented, or played any

20   role in proffering the policy at issue, and therefore has not shown how the medical staff

21   could appropriately respond to his request for a change in the policy.  Plaintiff has

22   therefore failed to make out a cognizable claim against medical staff Does 1 through 3 in

23   their official capacities. Plaintiff was previously advised of this deficiency and failed to

24   correct it; he will not be given additional leave to amend this claim.

25        **B.    Eighth Amendment Medical Indifference**

26         For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must

27   show (1) a serious medical need by demonstrating that failure to treat [his] condition

28   could result in further significant injury or the unnecessary and wanton infliction of pain,"

and (2) that "the defendant's response to the need was deliberately indifferent." <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).  Indifference may appear "when prison officials deny, delay, or internationally interfere with medical treatment." <u>Jett</u>, 439 F.3d at 1096 (internal quotations omitted). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014) (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

The second element of an Eighth Amendment claim is subjective deliberate indifference, which involves two parts. <u>Lemire v. Cal. Dept. of Corr. & Rehab.</u>, 726 F.3d 1062, 1078 (9th Cir. 2013). Plaintiff must demonstrate first that the risk was obvious or provide other circumstantial evidence that Defendants were aware of the substantial risk to his health, and second that there was no reasonable justification for exposing him to that risk.  <u>Id.</u> (citing <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted). There must be some causal connection between the actions or omissions of each named defendant and the violation at issue; liability may not be imposed under a theory of *respondeat superior.*  <u>Iqbal</u>, 556 U.S. at 676-77; <u>Lemire</u>, 726 F.3d at 1074-75; <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Where a plaintiff alleges the constitutional violation was the result of an unconstitutional policy implemented by a state entity or its agents, he must show that the entity or its agents acted with the state of mind required to prove the underlying violation. <u>Estelle v. Gamble</u>, 429 U.S. at 105 (quoting <u>Board of County Comm'rs of Bryan Cty., Okl. v. Brown</u>, 520 U.S. 397, 405 (1997) (quotation marks omitted).

1   Here, Plaintiff alleges he was diagnosed with HCV nearly a decade ago.   Left

2   untreated, this disease may lead to severe liver damage and death. This amounts to an

3   objectively serious medical need.   Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir.

4   2014); Jett, 439 F.3d at 1096.

5   Plaintiff states Does 1 through 3 are medical staff members who each treated

6   Plaintiff at some point during his incarceration in KVSP.   All knew of Plaintiff's diagnosis

7   and all knew of the symptoms Plaintiff began to experience within the last year.   Plaintiff

8   contends they also knew of the existence of medications shown to significantly improve

9   the long-term prognoses of patients diagnosed with HCV genotype 1, but chose not to

10   prescribe Plaintiff any of those medications. Plaintiff further alleges that Does 1 through 3

11   refused treatment to Plaintiff in accordance with a policy implemented by Does 4 through

12   18. The policy requires an inmate with HCV to advance to stage 3 or 4 of the disease

13   before he will be eligible to receive treatment. According to Plaintiff, therefore, the

14   determination not to treat Plaintiff was made based not on any independent medical

15   evaluation of Plaintiff's condition or need for treatment, but on a blanket institutional

16   policy. These facts are sufficient to allege a cognizable claim against Does 1 through 3

17   for denying treatment for Plaintiff's HCV on three separate occasions without conducting

18   an independent evaluation of Plaintiff's need for treatment.

19   Furthermore, Does 4 through 18 were all HUM Committee members tasked with

20   formulating and implementing policies pertaining to the care and treatment of inmates

21   with HCV.   As such, they knew or should have known of the nature and effects of HCV

22   and the types and efficacies of the available treatments for the disease. Plaintiff has

23   therefore sufficiently alleged a cognizable claim against Does 4 through 18 in their official

24   capacities for implementing a policy that violates the Eighth Amendment.

25   **V.    Order Opening Discovery**

26   Plaintiff's sues Doe Defendants only. Although the use of Doe Defendants is

27   generally disfavored, the Ninth Circuit requires that Plaintiff be provided with "an

28

Case 1:15-cv-01916-MJS   Document 10   Filed 11/15/16   Page 9 of 11

opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover their identities…." <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980)).

Therefore, the Court will open discovery for a period of four months for the limited purpose of identifying Doe Defendants. Given that Plaintiff is limited to seeking discovery pursuant to Rule 45 of the Federal Rules of Civil Procedure at this stage of the proceedings, he is entitled to the issuance of *subpoenas duces tecum* under Rule 45. Plaintiff shall inform the court within **thirty days** which documents need to be produced by the CDCR or KVSP to identify Does 1 through 3 and Does 4 through 18. Plaintiff must be as precise as possible when naming documents. He must limit his request to documents that might reveal the identity of the Doe Defendants, and he must tailor the subpoena so as to avoid undue burden and expense on the part of the responding party. <u>See</u> Fed. R. Civ. P. 45(d)(1). Upon receipt of this information, the Court will direct the United States Marshal to serve the *subpoenas duces tecum*.

The Court notes that Does 1 through 3 were directly involved in providing Plaintiff medical care. Thus, information regarding their identities may be readily available to Plaintiff through his own medical file and appeal records. The Court will not issue subpoenas for documents that are available to Plaintiff through his institution and upon his request. Prior to requesting any subpoenas relating to the identity of Does 1 through 3, Plaintiff must first attempt to determine their identities through a review of his own prison records. If he nonetheless is unable to identify Does 1 through 3 in this manner, his request for subpoenas must be accompanied by a declaration setting out with specificity the efforts he undertook and how and why they were unsuccessful.

Furthermore, Plaintiff is entitled to subpoena a roster of the individuals on the HUM Committee responsible for developing and implementing the policy at issue. Plaintiff should therefore submit to the Court as much information as he has about the policy, including its official name and number as well as the date it went into effect. Plaintiff

should also submit a mailing address where the HUM Committee members may be served. The Court will then issue a subpoena for CDCR to produce a roster of all members of the HUM Committee members serving from January 1, 2010 to January 7, 2015 who participated in developing this policy.

Lastly, Plaintiff alone is responsible for identifying Doe Defendants and for moving to amend the complaint to substitute named defendants in place of Does. If Plaintiff has not moved to amend within thirty days of the close of discovery, the action may be dismissed.

## VI.   Conclusion

Plaintiff states a cognizable claim against Does 1 through 3 in their personal capacities for denying Plaintiff treatment for his HCV without considering Plaintiff's individualized need for treatment, in violation of the Eighth Amendment. Plaintiff also states a cognizable claim against Defendants Does 4 through 18 in their official capacities for implementing a blanket policy denying treatment to Plaintiff for his HCV, also in violation of the Eighth Amendment.  Because the Court cannot order the Marshal to serve Defendants whose identities are unknown, the Court will open discovery for the limited purpose of ascertaining the names and address of all Defendants.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff may proceed on his Eighth Amendment claims against Does 1 through 3 in their personal capacities and Does 4 through 18 in their official capacities, as alleged in his first amended complaint (ECF No. 8);

2. Plaintiff's claims against Does 1 through 3 in their official capacities are dismissed with prejudice;

3. Discovery shall be open until **March 15, 2017** for the limited purpose of obtaining documents necessary to identify all Doe Defendants;

4. Within **thirty (30) days** from the date of service of this order, Plaintiff must specify the documents necessary to identify the Doe Defendants, as set forth in this order; and

5.  If Plaintiff fails to comply with this order, the Court will dismiss this action, with prejudice, for failure to obey a court order.

IT IS SO ORDERED.

Dated:   November 15, 2016      /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE