UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BACA , <br><br>            Plaintiff, <br><br>     v. <br><br> MARTIN BITER, et al., <br><br>            Defendants. | CASE NO. 1:15-cv-01916-MJS (PC) <br><br> **ORDER DENYING CDCR'S MOTION TO QUASH SUBPOENA** <br><br> **(ECF No. 20)** <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT AND ORDER AFTER SCREENING OF SECOND AMENDED COMPLAINT** <br><br> **(ECF No. 21)** <br><br> **CLERK OF COURT TO FILE EXHIBIT A, FILED AT ECF NO. 21-3, AS "SECOND AMENDED COMPLAINT"** <br><br> **CDCR TO RESPOND TO SUBPOENA WITHIN TEN (10) DAYS** <br><br> **PLAINTIFF TO FILE THIRD AMENDED COMPLAINT WITHIN THIRTY (30) DAYS OF RECEIVING RESPONSE TO SUBPOENA** |

1

## I.    Procedural History

Plaintiff is a state prisoner proceeding in forma pauperis with appointed counsel in this civil rights action brought pursuant to 42 U.S.C. § 1983. He has consented to Magistrate judge jurisdiction. (ECF No. 5.) No other parties have appeared.

On November 15, 2016, while Plaintiff was proceeding pro se, the Court screened his first amended complaint ("FAC") and found that it stated cognizable claims against Defendant Does 1-3, medical professionals at Kern Valley State Prison ("KVSP"), and Does 4-18, members of the Headquarters Utilization Management Committee ("HUMC") employed by the California Department of Corrections and Rehabilitation ("CDCR") for failing to treat Plaintiff for diagnosed Hepatitis C virus ("HCV") in violation of the Eighth Amendment. (ECF No. 10.)

The Court opened discovery for the limited purpose of identifying the names of the Doe Defendants.  (Id.)  Plaintiff was directed to inform the Court of the documents needed from CDCR or the prison to identify the Doe Defendants. (Id.)

On March 3, 2017, Plaintiff, through his newly appointed counsel, filed a request for the issuance of a subpoena duces tecum directed to Plaintiff's current institution, High Desert State Prison ("HDSP"), to produce portions of Plaintiff's medical record, and another to CDCR for a complete roster of HUM Committee members from January 1, 2010 to January 7, 2015. (ECF No. 13.)  On April 25, 2017, the Court granted in part Plaintiff's request for the names of the HUMC members, and issued a subpoena for the names of the individuals currently serving on the HUMC since they had been sued in their official capacities. (On April 26, 2017, Plaintiff informed the Court he had received his medical record from HDSP, and so requested that that subpoena be voided. (ECF No. 16.) His latter request was granted. (ECF No. 17.))

On June 12, 2017, the CDCR, as a party in interest, filed a motion to quash the subpoena for the names of the HUMC members. (ECF No. 20.) Plaintiff did not file an opposition; rather, on July 7, 2017, he filed a motion for leave to file a second amended

1  complaint ("SAC"), stating therein that the proposed SAC would render the CDCR's
2  motion to quash moot. (ECF No. 21.) The CDCR filed an opposition. (ECF No. 22.)
3  Plaintiff filed a reply. (ECF No. 23.) Both matters are submitted and will be addressed
4  here without oral argument. Local Rule 230(*l*).

5  **II.  Motion to Amend**

6  **A.  Legal Standard**

7  A party may amend its pleading once as a matter of course at any time before a
8  responsive pleading is served and up to twenty-one days after service of a responsive
9  pleading.  Fed. R. Civ. P. 15(a)(1)(B). Otherwise, a party may amend only by leave of
10 the court or by written consent of the adverse party, and leave shall be freely given when
11 justice so requires.  Fed. R. Civ. P. 15(a)(2).  In this case, Plaintiff has already amended
12 once, pursuant to the Court's screening order. (See ECF No. 6.)  Therefore, Plaintiff may
13 not file a SAC without leave of court. Furthermore, as Plaintiff is a prisoner proceeding in
14 forma pauperis, under 28 U.S.C. § 1915A(a), the Court is required to screen his
15 complaint prior to service.

16 Local Rule 220 requires that an amended complaint be complete in itself without
17 reference to any prior pleading. As a general rule, an amended complaint supersedes
18 the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

19 "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice
20 so requires.'" AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th
21 Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  In determining whether to grant leave to
22 amend, courts generally consider four factors: (1) bad faith, (2) undue delay, (3)
23 prejudice to the opposing party, and (4) futility of amendment.  In re Korean Airlines Co.,
24 Ltd., 642 F.3d 685, 701 (9th Cir. 2011) (citing Kaplan v. Rose, 49 F.3d 1363, 1370 (9th
25 Cir. 1994)) (quotation marks omitted); also Foman v. Davis, 371 U.S. 178, 182 (1962);
26 Waldrip v. Hall, 548 F.3d, 729, 732 (9th Cir. 2008); AmerisourceBergen Corp. v. Dialysis
27 West, Inc., 465 F.3d 946, 951 (9th Cir. 2006); Eminence Capital, LLC, 316 F.3d at 1052.

28

1    In evaluating whether a proposed amendment is futile, the Court must determine

2    whether the amendment would withstand a motion to dismiss under Federal Rule of Civil

3    Procedure 12(b)(6), and in making this evaluation, the Court is confined to review of the

4    proposed amended pleading.  Nordyke v. King, 644 F.3d 776, 788 n.12 (9th Cir. 2011)

5    (citing Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) (*reh'g en banc*

6    Nordyke v. King, 681 F.3d 1041 (9th Cir. 2012).

7        Prejudice to the opposing party carries the greatest weight, and absent prejudice,

8    or a strong showing of any of the remaining factors, there exists a presumption in favor

9    of granting leave to amend. Eminence Capital, LLC, 316 F.3d at 1052 (quotation marks

10   omitted).

11   **B.      Allegations in Plaintiff's FAC**

12       At the time the FAC was filed, Plaintiff was incarcerated at KVSP in Delano,

13   California and infected with genotype 1 HCV. He sued Does 1 through 3, physicians and

14   primary care providers ("medical staff") employed by the California Department of

15   Corrections and Rehabilitation ("CDCR") at KVSP, and Does 4 through 18, members of

16   the Headquarters Utilization Management Committee ("HUMC") employed by CDCR

17   (collectively, "Defendants"). He alleged:   Does 1 through 3 were each directly

18   responsible for Plaintiff's medical care. Does 4 through 18 were responsible for the

19   implementation of CDCR policies regarding inmate medical care. Defendants violated

20   Plaintiff's right to be free from inhumane conditions of confinement under the Eighth

21   Amendment by refusing to prescribe Plaintiff Harvoni (or a similar medication) even

22   though it has been shown to be 99% effective in curing patients with HCV. Although not

23   directly involved in Plaintiff's treatment, Does 4 through 18 violated Plaintiff's rights by

24   promulgating a policy dictating that inmates may receive treatment for HCV only after

25   their disease has advanced to at least stage 3.  Plaintiff alleges that individuals at stage

26   3 have already begun to experience cirrhosis of the liver and/or liver failure.

27

28

4

1    The undersigned found Plaintiff's complaint stated cognizable claims against

2    Does 1-3 in their personal capacities and Does 4-18 in their official capacities.

3    **C.    Allegations in Proposed SAC**

4    Plaintiff is now incarcerated at HDSP. He names as Defendants Drs. Schaeffer

5    and Akanno of KVSP (in their individual capacities), Dr. Bzoskie of HDSP (in his

6    individual and official capacity), and Does 1-6. Plaintiff also sues the HUMC (in its official

7    capacity) and Does 7-20, current or former members of the HUMC (in their individual

8    capacities.)

9    The underlying allegations regarding HCV and the available treatment options

10   remain as described in the Court's previous screening Orders and need not be repeated

11   herein. Otherwise, Plaintiff's essential allegations may be summarized as follows:

12   On May 21, 2014, Plaintiff was seen by Dr. Schaeffer for an annual exam.

13   Although Dr. Schaeffer knew of Plaintiff's illness through of review of his medical history,

14   she did not order treatment for his HCV. On January 7, 2015, Plaintiff underwent an in-

15   depth medical assessment in which his medical history, tests, and symptoms were

16   discussed and lab tests were ordered. On February 25, 2015 Plaintiff saw a nurse to

17   discuss his test results. It was determined that Plaintiff was ineligible for HCV treatment.

18   On March 8, 2015, Plaintiff was seen by a nurse practitioner regarding an appeal he filed

19   concerning his HCV treatment. He was again denied treatment. On May 28, 2015,

20   Plaintiff saw Dr. Akanno for a wellness visit and tests were again ordered. Plaintiff

21   brought up his HCV symptoms with Dr. Akanno, however he was again refused

22   treatment. On June 15, 2015, Dr. Akanno reviewed Plaintiff's test results, and Plaintiff

23   was again denied treatment. On December 21, 2015, after he was transferred to HDSP,

24   Plaintiff was seen by Dr. Bzoskie, who also failed to prescribe Plaintiff medication to treat

25   his HCV. Does 1-6 are other medical professionals, currently unknown to Plaintiff, who

26   were involved in his treatment or denial thereof at either KVSP or HDSP.

27

28

1    Does 7-20 are members of the HUMC. This committee is responsible for

2    developing policies and procedures to ensure statewide adherence to a utilization

3    management program. As members of the HUMC, these Defendants develop California

4    Correctional Health Care Services ("CCHCS") policies. The HUMC members know that

5    HCV constitutes a serious medical need that, left untreated, can lead to permanent liver

6    damage and death. Despite this, these Defendants set forth a policy which has the

7    intended effect of denying Plaintiff access to effective treatments for his HCV.

8    Plaintiff alleges four causes of action: 1) a claim for damages against Defendants

9    Schaeffer, Akanno, and Bzoskie and doctor Does 1-6 for cruel and unusual punishment

10   in violation of the Eighth and Fourteenth Amendments; 2) a claim for damages against

11   HUMC members Does 7-20 for cruel and unusual punishment in violation of the Eighth

12   and Fourteenth Amendments; 3) a claim for injunctive relief against the HUMC, Dr.

13   Bzoskie, and Does 1-6; and 4) a claim for damages for negligence against all

14   Defendants.

15       **D.    Discussion**

16   Plaintiff argues that amendment is appropriate because he now has the benefit of

17   counsel who can identify additional claims arising from Plaintiff's allegations.

18   The CDCR, as a party in interest, argues that Plaintiff's motion to amend should

19   be denied as futile with regard to the second, third, and fourth causes of action because

20   the claims would be subject to dismissal for failure to state a claim, Eleventh Amendment

21   immunity, qualified immunity, and failure to exhaust administrative remedies.

22   At the pleading stage, Plaintiff's allegations that Defendants were deliberately

23   indifferent to a substantial risk to Plaintiff's health when they refused to prescribe

24   medication to treat his HCV and/or enacted blanket policies intended to deny treatment

25   to an inmate in Plaintiff's position are more than sufficient to state a claim under the

26   Eighth Amendment. While the HUMC itself is immune from suit under the Eleventh

27   Amendment, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010), dismissal of

28

1  the entire SAC on these grounds is not warranted. As Plaintiff's allegations at the

2  pleading stage are sufficient to allege constitutional violation, and there are insufficient

3  facts from which the Court can determine that the HUMC members' actions were

4  reasonable under clearly established law, a finding of qualified immunity cannot be made

5  at this time. Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) ("The doctrine of

6  qualified immunity protects government officials 'from liability for civil damages insofar as

7  their conduct does not violate clearly established statutory or constitutional rights of

8  which a reasonable person would have known.'") (quoting Pearson v. Callahan, 555 U.S.

9  223, 231 (2009)).

10      The CDCR argues that since Plaintiff does not plead compliance with California's

11  Tort Claims Act, his state law negligence claim is barred for failure to exhaust

12  administrative remedies.  The state Tort Claims Act requires that a tort claim against a

13  public entity or its employees be presented to the California Victim Compensation and

14  Government Claims Board ("the Board") no more than six months after the cause of

15  action accrues.  Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009).

16  Presentation of a written claim, and action on or rejection of the claim are conditions

17  precedent to suit.  State v. Super. Ct. of Kings Cty. (Bodde), 90 P.3d 116, 124 (2004);

18  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

19      Plaintiff seeks leave to amend his complaint to plead facts showing that he has

20  complied with the Act. (ECF No. 23 at 4.) That request will be granted.  Accordingly,

21  Defendant's challenge based on non-compliance with the California Tort Claims Act will

22  be denied without prejudice.

23      The Court will proceed to screening Plaintiff's SAC.

24  **E.    Screening of SAC**

25      The Court is required to screen complaints brought by prisoners seeking relief

26  against a governmental entity or an officer or employee of a governmental entity.  28

27  U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner

28

7

1 has raised claims that are legally "frivolous or malicious," that fail to state a claim upon

2 which relief may be granted, or that seek monetary relief from a defendant who is

3 immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Under section 1983, Plaintiff

4 must demonstrate that each defendant personally participated in the deprivation of his

5 rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

6        Again, inasmuch as the substance and legal standards underlying Plaintiff's

7 claims remain unchanged, the Court will not repeat the analyses contained in its

8 previous screening. For the reasons set forth in that order (ECF No. 13), Plaintiff is

9 entitled to proceed on his Eighth Amendment medical indifference claims against Drs.

10 Schaeffer, Akanno, and Bzoskie for denying Plaintiff treatment for his HCV. Plaintiff may

11 proceed against these Defendants in their individual capacities only.

12        Likewise, Plaintiff will be permitted to proceed against Does 7-20 in their individual

13 capacities for implementing a policy that they knew or should have known would place

14 an inmate in Plaintiff's situation at risk of suffering serious harm.

15        However, as the CDCR correctly points out, the Eleventh Amendment precludes

16 suits against the HUMC itself. Therefore, that claim will be dismissed without leave to

17 amend. Furthermore, Plaintiff's general allegations against Does 1-6 are insufficient to

18 link these Defendants to the alleged violations. Leer v. Murphy, 844 F.2d 628, 634 (9th

19 Cir. 1988) (plaintiff may not attribute liability to a group of defendants, but must "set forth

20 specific facts as to each individual defendant's" deprivation of his rights.) Plaintiff will be

21 granted leave to amend his claims against Does 1-6.

22        The proposed SAC omits Plaintiff's original claim against the HUMC members in

23 their official capacities. The Court assumes this is error since, to the extent Plaintiff

24 seeks injunctive relief in the form of a change in policy, only those committee members

25 currently serving or serving at the time the injunctive relief is granted (if it is granted)

26 would be able to effectuate such a change. It is possible that the HUMC members who

27 implemented the offending policy are no longer serving, or that the members currently

28

1  serving will not be serving at the conclusion of this case. Suing these members in their

2  official capacities allows for their replacements to be automatically substituted into the

3  lawsuit should they step down or otherwise relinquish their positions of power. Hafer v.

4  Melo, 502 U.S. 21, 25 (1991) (because a suit against a state official in his or her official

5  capacity is treated as a suit against the state, in which the "real party in interest  . . . is

6  the governmental entity and not the named official," when such named official leaves

7  office, "[his or her] successor automatically assumes [his or her] role in the litigation.")

8  Plaintiff will thus be given leave to amend his complaint to re-plead his claim against the

9  HUMC members in their official capacities.

10     And, as explained above, Plaintiff will also be given an opportunity to amend his

11  complaint to plead compliance with the Tort Claims Act with regard to his negligence

12  claim.

13  **III.    Motion to Quash**

14     **A.    Legal Standard**

15     Rule 45(c)(3)(A)(iii) mandates quashing a subpoena if it "requires disclosure of

16  privileged or other protected matter, if no exception or waiver applies[.]" Jennings v.

17  Moreland, No. CIV S-08-1305 LKK, 2012 WL 761360, at *1 (E.D. Cal. Mar. 6, 2012).

18     In civil rights cases brought under section 1983, questions of privilege are

19  resolved by federal law. Kerr v. United States Dist. Ct. for the N. Dist. of Cal., 511 F.2d

20  192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court

21  decisions, is not binding on federal courts in these kinds of cases." Kelly v. City of San

22  Jose, 114 F.R.D. 653, 655–56 (N.D. Cal. 1987). "Federal common law recognizes a

23  qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027,

24  1033 (9th Cir. 1990) (citing Kerr, 511 F.2d at 198.) The discoverability of official

25  documents should be determined under the "balancing approach that is moderately pre-

26  weighted in favor of disclosure." Kelly, 114 F.R.D. at 661. The party asserting the

27  privilege must properly invoke the privilege by making a "substantial threshold showing"

28

1    that the privilege should apply. Id. at 669-70.

2    **B.    CDCR's Arguments**

3    The CDCR moves to quash the subpoena seeking names of the HUMC members

4    on three grounds: 1) the information sought is irrelevant; 2) it is protected by the official

5    information privilege; and 3) it is protected by the deliberative process privilege. As to the

6    first point, the CDCR argues that since the HUMC works as a unit, no single HUMC

7    member can appropriately respond to Plaintiff's request for injunctive relief and so the

8    identities of each member are irrelevant. On the second point, CDCR argues that the

9    identities of the HUMC committee members, all private citizens, must be protected to

10    ensure their safety and encourage their open and candid participation in the committee.

11    To their third point, CDCR argues that "it is clear" Plaintiff seeks the names of the

12    individual HUMC members in order to obtain information regarding their individual

13    advisory or "pre-decisional" opinions as well as information about the HUMC decision-

14    making process.

15    **C.    Discussion**

16    The CDCR argues that the names of the individual HUMC members are irrelevant

17    since no single person can effectuate policy. However, as the CDCR itself pointed out,

18    HUMC as a unit is immune from suit. If Plaintiff is foreclosed from proceeding against the

19    HUMC members, he would be foreclosed from pursuing a 1983 claim for promulgation

20    an unconstitutional policy. Regardless, Plaintiff has indicated an intent to amend his

21    complaint to include claims against the HUMC members in their individual capacities.

22    Each member's name is therefore relevant.

23    CDCR's arguments regarding privilege are not persuasive. "[A] party moving to

24    quash a subpoena on the grounds of confidentiality or privilege [is required] to provide

25    detailed, case-specific reasons why a complete bar to the disclosure of relevant material

26    is the only viable option in responding to the subpoena." Jennings, 2012 WL 761360 at

27    *2. The CDCR has not done that here. The CDCR claims generally that disclosing the

28

names of HUMC members could subject them to harassment, threats from inmates, or other adverse actions, thereby chilling them from effectively performing their duties. However, a party resisting disclosure on privilege grounds "must *specifically* describe how disclosure of the requested documents in that particular case . . . would be harmful." Chism v. Cty. of San Bernadino, 159 F.R.D. 531, 535 (C.D. Cal. Dec. 23, 1994) (emphasis added). A general assertion that HUMC members would be chilled from performing their job functions if their identities were disclosed is insufficient. Furthermore, as explained above, the HUMC members are properly named as Defendants in this action, and thus, the need to identify and serve them outweighs any interest of the CDCR in keeping their identities secret.

Finally, the deliberative process privilege exempts from discovery information reflecting opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated. FTC v. Warner Comm's., Inc., 742 F.2d 1156, 1161 (9th Cir.1984). The purpose of the privilege is to shield from public scrutiny any ideas, thoughts, or opinions that are expressed in the process of formulating governmental policies. Assembly of California v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992). The key inquiry in determining whether particular information is "deliberative" is whether disclosure of the information would expose the decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. Carter v. United States DOC, 307 F.3d 1084, 1090 (9th Cir. 2002). At this stage in the litigation, Plaintiff seeks not evidence of the HUMC deliberations, but rather the names of the HUMC members. He seeks not to challenge the deliberative process, but the conclusion reached. The deliberative process privilege does not apply.

For the foregoing reasons, the CDCR's motion to quash will be denied, and the CDCR will be directed to respond as ordered in ECF No. 15 within ten days.

1     (Among the relief sought in Plaintiff's SAC is a possible preliminary injunction

2 request. (ECF No. 21-3 at 11.) He has not, however, even addressed, much less

3 demonstrated compliance with, the prerequisites to such relief <u>Winter v. Natural</u>

4 <u>Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008), so the Court will not analyze

5 the issue at this juncture of the pleadings.)

6 **IV.    Conclusion and Order**

7     Based on the foregoing, it is HEREBY ORDERED that:

8     1.  The CDCR's motion to quash the subpoena duces tecum (ECF No. 20) is

9         DENIED;

10     2.  The CDCR is ordered to serve a response to the subpoena duces tecum on

11         Plaintiff's counsel within ten (10) days of this order;

12     3.  Plaintiff's motion to amend (ECF No. 21) is GRANTED;

13     4.  The Clerk of Court is directed to file the document filed at ECF No. 21-3 as a

14         separate docket entry entitled "SECOND AMENDED COMPLAINT"; and

15     5.  Plaintiff is DIRECTED to file a third amended complaint identifying, to the

16         extent possible, the Doe Defendants by name and curing the deficiencies

17         noted herein within thirty (30) days of receiving the CDCR's response to the

18         subpoena duces tecum.

19

20 IT IS SO ORDERED.

21     Dated:   __September 19, 2017__      /s/ *Michael J. Seng*

22                                         UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28