1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   FRANK BACA,                                Case No. 1:15-cv-01916-DAD-JDP

12                 Plaintiff,                   FINDINGS AND RECOMMENDATIONS
                                                THAT DEFENDANTS' MOTIONS TO
13         v.                                   DISMISS BE DENIED

14   MARTIN BITER, *et al*.,                    ECF Nos. 72, 82

15                 Defendants.

16

17         Plaintiff is a state prisoner proceeding with counsel in this civil rights action brought

18   under 42 U.S.C. § 1983.  This case proceeds on plaintiff's third amended complaint ("TAC"),

19   filed on September 15, 2016.  ECF No. 29; ECF No. 40.  Plaintiff has the Hepatitis C Virus

20   ("HCV").  Plaintiff alleges that "[w]hile under the exclusive care of the California Department of

21   Corrections and Rehabilitation ('CDCR') he has suffered pain and has been put at risk of

22   permanent liver damage and death because of 1) the refusal by individual doctors of CDCR to

23   properly treat him; and 2) CDCR policies that have intentionally and knowingly denied him

24   necessary treatment."  ECF No. 29 at 2.

25         The court screened plaintiff's TAC and found all claims to be cognizable:  (1) claims for

26   damages against defendants Dileo, Schaeffer, Akanno, and Bzoskie in their individual capacities

27   for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments;

28

                                               1

(2) claims for damages against Headquarters Utilization Management Committee ("HUMC")[1] members since December 6, 2016—Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Boparai, and Does 1-10—in their individual capacities for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; and (3) claims for injunctive relief against Bzoski and the current HUMC members in their official capacities for implementing policies and procedures that have caused and are causing deprivation of plaintiff's Eighth Amendment rights. ECF No. 40 at 7-9.

On August 8, 2018, all defendants filed a motion to dismiss.[2] ECF No. 59. On August 30, 2018, plaintiff filed an opposition to the motion to dismiss. ECF No. 87. All defendants but Igbinosa and Akanno filed a reply to plaintiff's opposition on September 5, 2018. ECF No. 89. On August 14, 2018, defendant Akanno filed a separate motion to dismiss. ECF No. 82. On August 30, 2018, plaintiff filed an opposition to defendant Akanno's motion to dismiss. ECF No. 88. Defendant Akanno filed a reply to plaintiff's opposition on September 6, 2018, ECF No. 90. Both motions to dismiss are now before the court, and we will recommend that they be denied.

## I.     LEGAL STANDARD

A motion to dismiss brought under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). A court's review is generally limited to the operative pleading. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). A pleading is sufficient, in accordance with Rule 8(a)(2), if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

[1] The committee is allegedly responsible for developing the California Correctional Health Care Services policy. ECF No. 29.

[2] Originally, only defendants Bal, Boparai, Bzoskie, Carmichael, Carrick, Dileo, Dos Santos, Kanan, Ralston, Song, Tharratt, and Vasudeva filed the motion to dismiss. ECF No. 71. Defendants Igbinosa and Akanno later joined the motion to dismiss. ECF No. 75; ECF No. 85.

1   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

2   41, 47 (1957)).

3        The first step in testing the sufficiency of the complaint is to identify any conclusory

4   allegations.  *Iqbal*, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action,

5   supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Twombly*, 550 U.S.

6   at 555).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

7   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

8   will not do."  *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).  The second step

9   is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its

10  face."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  A claim is facially plausible

11  when the plaintiff "pleads factual content that allows the court to draw the reasonable inference

12  that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at

13  556).  The standard for plausibility is not akin to a "probability requirement," but it requires

14  "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

15        To decide a motion to dismiss, the court must accept all factual allegations in the

16  complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hosp. Bldg. Co. v. Rex Hosp.*

17  *Trustees*, 425 U.S. 738, 740 (1976).  The court must construe the alleged facts in the light most

18  favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other*

19  *grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th

20  Cir. 1994) (per curiam).  All ambiguities or doubts must be resolved in the plaintiff's favor.  *See*

21  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

22  **II.     PLAINTIFF'S THIRD AMENDED COMPLAINT**

23        Plaintiff filed his TAC on October 27, 2017.  ECF No. 29.  The court will summarize

24  plaintiff's allegations about HCV and its treatment, HUMC's policies concerning HCV, and the

25  treatment of plaintiff's HCV by CDCR healthcare providers.  The court will also summarize

26  plaintiff's causes of action and allegations that support them.  The following information, which

27  the court must accept as true, is drawn entirely from the TAC.

28

**A. HCV and Its Treatment**

HCV is a viral infection that attacks the liver.  The virus can be fatal.  Before 2013, HCV infection was treated with interferons—a forty-eight-week treatment with a low effectiveness rate and debilitating side effects.  In 2013, the U.S. Food and Drug Administration ("FDA") approved a new treatment for HCV: direct-acting anti-viral drugs ("DAAs").  DAA treatment lasts 12 weeks, has a high rate of effectiveness in curing HCV infection without the harsh side effects of interferon treatment, and is effective at any stage of the disease.

In 2013, the American Association for the Study of Liver Disease and the Infectious Disease Society of America formed the HCV Guidance Panel to set standards for the diagnosis and treatment of HCV infection.  Those standards are now widely accepted throughout the medical community as the standard of care.  In its first report, in March of 2014, the HCV Guidance Panel stated that the forty-eight-week interferon treatment "should not be used."  On July 6, 2016, the Panel definitively established a twelve-week treatment regimen with DAAs as the standard of care.  Studies have indicated that such a regimen can cure HCV in over 95% of cases.

The Guidance Panel advises treating all HCV-positive individuals.[3]  This recommendation has been adopted by the U.S. Department of Veteran's Affairs and Medicare.  Likewise, the current policy of the Federal Bureau of Prisons is to screen all inmates for HCV infection and to treat them with DAAs.  In contrast, plaintiff alleges that the HUMC "has established an endless loop of procedures and eligibility criteria not based on sound medicine with the end goal of denying inmates access to treatment which can now cure their HCV before it does permanent damage."  ECF No. 29 at 7.

**B. HUMC's HCV Policies**

Defendants Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Bopari, and Does 1-10 are current or former members of the HUMC.  The committee is responsible for developing California Correctional Health Care Services policy.  Plaintiff

---

[3] Plaintiff alleges that studies have shown that early treatment provides the best prospect of recovery for HCV patients.

alleges that the members of the HUMC know that HCV constitutes a serious medical need, but "[t]he policies developed by these defendants set forth criteria which have the intended effect of denying plaintiff access to the overwhelmingly effective treatments for his HCV that have been available since 2013." ECF No. 29 at 9. These policies contravene current medical standards, and consequently, "[i]nmates such as plaintiff are made to suffer permanent liver damage, and be practically at death's door, before being administered treatment." *Id.* at 11. Through these policies, "defendants have denied [plaintiff] medical treatment that he needs to live a meaningful and productive life, free from the symptoms of HCV." *Id.* at 10.

### C. The Treatment of Plaintiff's HCV by CDCR Healthcare Providers

Plaintiff has suffered from genotype-1 HCV since at least 2007, when he had his first liver biopsy and the condition was diagnosed. At all times described in the TAC, plaintiff's HCV has gone untreated, and in the two years before filing the instant complaint, plaintiff began to suffer serious complications. He alleges that he has repeatedly sought medical treatment from CDCR, but his requests have been denied.

Prior to mid-2015, plaintiff was incarcerated at KVSP. Healthcare providers at KVSP, including defendant Larry Dileo, failed to treat plaintiff's HVP. Plaintiff describes various medical interactions with healthcare providers at KVSP in which he was denied adequate treatment:

- On May 21, 2014, plaintiff saw defendant Dr. Schaeffer for an annual exam. Plaintiff believes that Dr. Schaeffer knew of plaintiff's HCV. However, in contravention of the standard of care, Dr. Schaeffer did not order treatment for plaintiff.

- On February 25, 2015, plaintiff saw a nurse to discuss the results of laboratory tests conducted on January 7, 2015. At this consultation, the nurse informed plaintiff that he was ineligible for HCV treatment.

- On March 8, 2015, plaintiff saw a nurse practitioner regarding a 602 appeal he submitted concerning his lack of HCV treatment. At this meeting, plaintiff was again denied treatment.

- On May 28, 2015, plaintiff saw defendant Dr. Akanno for a wellness visit and lab tests. During this visit, plaintiff described his HCV symptoms, Dr. Akanno withheld treatment.

- On May 30, 2015, plaintiff filed a 602 appeal regarding the denial of medical care for his HCV.

- On June 15, 2015, Dr. Akanno reviewed plaintiff's lab results. Once again, Dr. Akanno did not provide HCV treatment to plaintiff.

Sometime after June 15, 2015, CDCR transferred plaintiff to High Desert State Prison ("HDSP"). On December 21, 2015, plaintiff saw defendant Dr. Bzoskie of HDSP for a medical appointment. Like the other healthcare providers, Dr. Bzoskie failed to treat plaintiff's HCV.

**D. Causes of Action**

### i. Claims of Cruel and Unusual Punishment Against Defendants DiLeo, Schaeffer, Akanno, and Bzoskie

Plaintiff argues that defendants have subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The medical staff in the facilities where plaintiff has been incarcerated are his only option for medical care. Rather than providing plaintiff with treatment that is likely to cure his HCV, plaintiff believes that defendants do not intend to treat him until his liver condition progresses to full cirrhosis. Plaintiff argues that it is cruel and unusual punishment for defendants to wait to treat plaintiff "until his advancing HCV puts him at death's door." ECF No. 29 at 8. Plaintiff prays for compensatory damages, including general and special damages, as well as punitive damages under 42 U.S.C. § 1983.

### ii. Claims of Cruel and Unusual Punishment Against Defendants Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Boparai, and Does 1-10

Plaintiff argues that defendants Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Bopari, and Does 1-10, who are or have been members of the HUMC since December 6, 2016, are liable for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. They are liable for failing to promulgate policy authorizing the treatment of HCV, even though they are aware that it is a potentially deadly disease and that effective medication has existed since 2013. The conduct of these defendants was, and continues to be, willful, wanton, malicious, and done with reckless disregard for the rights and safety of plaintiff. Plaintiff prays for compensatory damages, including general and

special damages, as well as punitive damages under 42 U.S.C. § 1983.

### iii. Claims for Injunctive Relief Against Defendants Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Boparai, and Bzoskie

Plaintiff argues that injunctive relief is needed to compel defendants who are members of the HUMC in their official capacities to adopt policies and practices consistent with the standard of care for HCV infection as outlined by the HCV Guidance Panel and to direct the immediate treatment of the plaintiff's HCV using the most medically appropriate DAA medication. Plaintiff argues that injunctive relief is likewise appropriate to compel defendant Bzoskie in his official capacity to treat plaintiff with DAA medication.

### III.    DISCUSSION

Defendants move to dismiss each of plaintiff's three causes of action: First, they argue that plaintiff's Fourteenth Amendment claims should be dismissed as "duplicative of his Eighth Amendment claims." ECF No. 72-1 at 10; *accord* ECF No. 82 at 10. Second, they argue that plaintiff's Eighth Amendment deliberate indifference claims should be dismissed for failure to state a claim. ECF No. 72-1 at 15; ECF No. 82 at 6. Third, they argue that plaintiff's injunctive relief claims should be dismissed as moot. *Id.* at 10. The court will discuss each argument in turn.

### A.  Plaintiff's "Fourteenth Amendment Claims"

In plaintiff's TAC, he characterized his first cause of action as "Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments." ECF No. 29 at 7. The court's screening order characterized the cause of action in the same manner and authorized it to proceed. ECF No. 40 at 7-9. In defendants' motion, they characterize plaintiff's Fourteenth Amendment claim as distinct from his Eighth Amendment claim, arguing that the former should be dismissed as "duplicative" of the latter. ECF No. 72-1 at 10; *accord* ECF No. 82 at 10. The court disagrees.

Through the constitutional doctrine of incorporation, the Supreme Court has held that portions of the first ten amendments to the United States Constitution are made applicable to the states through the Due Process clause of the Fourteenth Amendment. *See McDonald v. City of*

*Chicago, Ill.*, 561 U.S. 742, 754-66 (2010). The Eighth Amendment's prohibition on cruel and unusual punishment was incorporated in the conception of due process in *Robinson v. California*, 370 U.S. 660 (1962). Accordingly, though plaintiff's first cause of action has been referred to as "Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments," it is more precise to characterize it as cruel and unusual punishment in violation of the Eighth Amendment as incorporated by the Due Process Clause of the Fourteenth Amendment. Plaintiff brings no separate Fourteenth Amendment Due Process claim, and the court recognizes none.

### B. Plaintiff's Deliberate Indifference Claims

In the screening order of April 4, 2018, the court reviewed plaintiff's TAC and found that he had stated claims for deliberate indifference against defendants Drs. Dileo, Schaeffer, Akanno, and Bzoskie in their individual capacities for denying plaintiff treatment for his HCV. ECF No. 40 at 8. The court also found that plaintiff had stated claims for deliberate indifference against defendants Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Boparai, and Does 1-10 in their individual capacities for implementing a policy that placed plaintiff at risk of suffering serious harm. *Id.* Nonetheless, in their motion to dismiss, defendants argue that it is clear from the face of plaintiff's complaint that he has failed to state such claims. ECF No. 72-1 at 11-14; ECF No. 82 at 6. For the reasons outlined below, defendants' motions are denied.

### i. Deliberate Indifference Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires that the plaintiff show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). "This second prong—

defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—on appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### ii. Plaintiff's Claims Against Defendants Bzoskie, DiLeo, and Akanno

In the instant case, all parties agree that HCV is a serious medical need. The only question is whether plaintiff's allegations, taken as true, satisfy the second prong of the inquiry— whether "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal

quotations omitted)).  Defendants Bzoskie and DiLeo argue that they were not deliberately indifferent because they followed CDCR policy.  ECF No. 72-1 at 12 ("Based on CDCR's then-existing policies and Plaintiff's FEB-4 scores, Plaintiff was ineligible for HCV treatment.").

Defendants' argument misses the point.  Plaintiff's case is premised on the proposition that CDCR's HCV policy at the time of the complaint was deliberately indifferent to his serious medical needs.  By carrying out that policy, plaintiff argues that defendants Bzoskie and DiLeo were deliberately indifferent.  Defendants cite no authority for the proposition that "following policy" is an absolute defense to a deliberate indifference claim.

In a similar vein, defendant Akanno argues that he "cannot be held constitutionally liable for failing to provide a type of medical treatment that was not available for him to prescribe to Plaintiff."  ECF No. 82 at 10.  Specifically, defendant Akanno argues that "[a]ccording to [plaintiff's] allegations, Plaintiff was ineligible for HCV treatment under CDCR treatment guidelines, and [DAAs were] not approved by CDCR as a treatment option."  ECF No. 82 at 10 (citing TAC ¶ 26).  Defendant Akanno's argument fails, however, because ¶ 26[4] does not say that DAAs were not approved by CDCR as a treatment.  To the contrary, the 2015 CDCR policy states that DAAs were approved for use in certain circumstances, ECF No. 72-2 at 197-211.  Moreover, the court must accept all material factual allegations as true and construe the alleged facts in the light most favorable to the plaintiff.  *See Scheuer*, 416 U.S. at 236.  Thus, even if it were possible to read the complaint to say that CDCR prohibited doctors from prescribing DAAs, the court could not do so under the motion-to-dismiss standard.

In the alternative, all three defendants argue that "plaintiff's allegations only constitute a difference of opinion with defendants."  ECF No. 72-1 at 12 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to [an inmate's] serious medical needs.")); *accord* ECF No. 82 at 10.  Indeed, a mere difference of

---

[4] "26. The Guidance Panel advises treating all HCV positive individuals.  This recommendation has been adopted by the U.S. Department of Veteran's Affairs and Medicare.  The current policy of the Federal Bureau of Prisons is to screen all inmates for HCV infection and treat them with DAA's.  In contrast, the HUM Committee has established an endless loop of procedures and eligibility criteria not based on sound medicine with the end goal of denying inmates access to treatment which can now cure their HCV before it does permanent damage."  ECF No. 29 at 7.

opinion between a plaintiff and a healthcare professional as to two reasonable courses of treatment cannot constitute deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (finding that changing a prescription from Seroquel to Triafon against the wishes of plaintiff does not state a claim for deliberate indifference). However, the difference-of-opinion line of cases presupposes two medically acceptable alternatives of medical treatment. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" (citation omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996))). Accepting plaintiff's allegations as true, plaintiff has made the requisite showing: There was only one medically acceptable treatment option, and the defendants chose the alternative—no treatment at all. Defendants' motions should be denied as to defendants Bzoskie, DiLeo, and Akanno.

### iii. Plaintiff's Claims Against HUMC Defendants

Defendants argue that plaintiff fails to state a claim against the HUMC defendants[5] because plaintiff "fails to allege that the [HUMC] Defendants were subjectively aware of any serious risk to Plaintiff's health." ECF No. 72-1 at 13 (citing *Peralta v. Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014) ("Correctional administrators who are not subjectively aware of any risk to an inmate, even if they should have been, cannot be deliberately indifferent to that risk")). Defendants' argument, however, is contradicted by the TAC:

> 39. The members of the HUM Committee know that HCV constitutes a serious medical need. The symptoms are wide-ranging and include pain and suffering. If untreated, HCV can lead to permanent liver damage and death. These individual members of the HUM Committee knew or should have known that each and every inmate in the CDCR who had been diagnosed with HCV, including the Plaintiff, would suffer needlessly in a variety of ways, up to and including death, as the result of the policies that they purposefully implemented.

---

[5] The HUMC defendants are Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Boparai, and Does 1-10.

ECF No. 29 at 9.  Considering the foregoing, plaintiff has sufficiently alleged that the committee defendants were subjectively aware of a serious risk to plaintiff's health.  As to defendants Carrick, Tharratt, Kanan, Ralston, Bal, Igbinosa, Dos Santos, Song, Vasudeva, Carmichael, Boparai, defendants' motions should be denied.

### C.  Plaintiff's Claims Seeking Declaratory and Injunctive Relief

Defendants argue that plaintiff's claims for declaratory and injunctive relief are moot because, as of December 2017, CDCR's "HCV Care Guide" adopted[6] the HCV Guidance Panel's standard of care and therefore "HCV inmates are now being treated with DAA medications." ECF No. 72-1 at 15.  Plaintiff points out, however, that CCHCS has not yet released information "about the implementation of the new Care Guide, including how many people will be affected, how priority will be determined and when treatment will be provided."  ECF No. 87 at 7 (quoting ECF No. 72 at 195).  Furthermore, the court infers from plaintiff's opposition brief that plaintiff has not yet received treatment for his HPC.  *Id.* ("The claim for injunctive relief will be moot when the Defendants begin providing DAA medication to Mr. Baca.  Not before.").  Accordingly, the court should decline to dismiss these claims as moot.

### D.  Qualified Immunity

Finally, defendants contend that they are entitled to qualified immunity.  Qualified immunity shields government officials from monetary damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).  To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful."  *Felarca*, 891 F.3d at 815.

To determine whether the law "clearly established" that the challenged conduct was unlawful, the court must consider whether the defendant "would have had fair notice that the

---

[6] According to defendants, "The December 2017 HCV policy was issued by a court-appointed Receiver acting under an injunction in the *Plata* class action litigation."  ECF No. 72-1 at 15-16.

action was unlawful." *Chappell v. Mandeville*, 706 F.3d 1052, 1056-57 (9th Cir. 2013).

Qualified immunity does not attach when the law is "sufficiently clear that every reasonable official would have understood" that the conduct in question was unlawful. *See Rodriguez v. Swartz*, 899 F.3d 719, 732 (9th Cir. 2018). Although a binding precedent can help determine what a reasonable official would have known, "it is not necessary . . . that the very action in question has previously been held unlawful." *Id.* at 732 (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017)). Qualified immunity does not attach in an "obvious case" of constitutional violation, even if the facts are novel. *See Rodriguez*, 899 F.3d at 734; *accord Hope v. Pelzer*, 536 U.S. 730, 738-39 (2002).

Here, defendants argue that even if plaintiff has alleged a constitutional violation, "it was not *clearly established* whether denying an HCV-inmate with DAA treatment constituted an Eighth Amendment violation." ECF No. 72-1 at 16-17 (emphasis added); *accord* ECF No. 82 at 11-14. According to defendants, "existing precedent must have placed the constitutional question beyond debate." ECF No. 72-1 at 17 (citing *Hamby v. Hammond*, 821 F.3d 1085, 1092-94 (9th Cir. 2016)). The court knows of no existing precedent that denying DAA treatment to an inmate afflicted with HCV constitutes an Eighth Amendment violation, but the absence of such specific precedent is not dispositive. A defendant cannot rely on qualified immunity "every time a novel method is used" to violate the constitution. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 796 (9th Cir. 2018) (quoting *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994)).

Defendants' argument does, however, illustrate the challenge inherent in the "clearly established" prong of the qualified-immunity inquiry: At what level of generality should we conduct the inquiry? A recent qualified-immunity case, cited by both parties, provides guidance. In *Hamby v. Hammond*, an incarcerated plaintiff alleged that his prison physicians were deliberately indifferent to his umbilical hernia because they prescribed non-surgical means of treatment rather than authorizing ameliorative surgery. 821 F.3d at 1093. A committee of prison healthcare officials tasked with determining whether proposed healthcare treatments were medically necessary deemed the plaintiff's umbilical-hernia surgery not medically necessary. *Id.* at 1089. In coming to this conclusion, the committee relied on information that plaintiff's hernia

was "easily reducible" and "although Hamby was in pain, he had been going to meals and his activities of daily living were not impaired." *Id.* Instead of surgery, the committee "recommended continued monitoring of Hamby's condition." *Id.* After this determination, the plaintiff later saw a physician's assistant who "noted that Hamby was attending classes and that his 'activities of daily living were unaffected,' and described his hernia as 'minimal,' and recommended [further] monitoring." *Id.* On appeal, the Ninth Circuit framed the qualified-immunity question as "was it 'beyond debate' that the prison officials pursued a medically unreasonable course of treatment by declining to refer Hamby for a surgical evaluation?" *Hamby v. Hammond*, 821 F.3d 1085, 1090, 1092 (9th Cir. 2016). Considering the foregoing facts, the Ninth Circuit answered this question in the negative.

In light of the parallels between *Hamby* and the instant case—both consider an incarcerated plaintiff who alleges deliberate indifference due to a failure to treat a serious medical problem—we frame the question in much the same way: Was it beyond debate that the prison officials pursued a medically unreasonable course of treatment by declining to treat plaintiff's HPV?

Yes, accepting plaintiff's allegations as true, it was beyond debate that defendants pursued a medically unreasonable course of treatment. HCV is a viral infection that, if left untreated, can be fatal. In 2013, the FDA approved the use of DAAs which have a high rate of effectiveness in curing HCV infection, and this treatment was recognized as the standard of care in 2014. Early treatment provides the best prospect of recovery for HCV patients. Nonetheless, plaintiff alleges that, since at least 2015, he has repeatedly requested and been denied this treatment. Consequentially, in the two years before filing the instant complaint, plaintiff has begun to suffer serious complications. The available treatment, decision not to treat, and the consequences of non-treatment distinguish the present case from *Hamby*, in which prison officials made a medically reasonable choice to closely monitor the plaintiff's non-life-threatening condition in lieu of surgery—a decision well within the prevailing standard of care. By contrast, plaintiff alleges that defendants in this case made a medically unreasonable choice in contravention of the standard of care: no treatment at all. Defendants are not entitled to qualified immunity.

IV.    FINDINGS AND RECOMMENDATIONS

Accordingly, we recommend that defendants' motions to dismiss, ECF Nos. 72, 82, be denied.

The undersigned submits the findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the service of the findings and recommendations, plaintiff may file written objections to the findings and recommendations with the court and serve a copy on all parties.  That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).  Plaintiff's failure to file objections within the specified time may result in the waiver of rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    January 24, 2019                                     _____
                                                              UNITED STATES MAGISTRATE JUDGE

No. 203.